Joe L. WHITE, Jr., James Walton, Ashby M. Joe, Jr., Thomas W. Newsome, Jr., William H. Freeman, Samuel E. Glover, Johnnie M. Williams, Plaintiffs,

v.

CITY OF SUFFOLK, Defendant.

Civ. A. Nos. 78–133–N and 78–142–N to 78–147–N.

United States District Court, E. D. Virginia, Norfolk Division.

Oct. 17, 1978.

518

Thomas L. Woodward, Jr., Johnnie E. Mizelle, Suffolk, Va., Gwendolyn Jones Jackson, Norfolk, Va., for plaintiffs.

Edwin T. Coulbourn, City Atty., Suffolk, Va., Frederick T. Gray, David R. Johnson, Richmond, Va., for defendant.

## OPINION AND ORDER

CLARKE, District Judge.

Plaintiffs filed these suits in March, 1978, alleging that defendant had engaged and was engaging in racially discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1] Plaintiffs and defendant have moved for summary judgment on certain issues in this case. In addition, plaintiffs filed a motion to reconsider an Order issued by this Court on June 27, 1978.

1. Plaintiff Joe White, Jr. brought suit only under Title VII, not under 42 U.S.C. § 1981.

## I. *Defendant's Motion for Summary Judgment*

Defendant has moved the Court to enter summary judgment in its favor by ruling that: (1) the portion of plaintiffs' claim under Title VII which is based on events prior to January 29, 1974, is barred by the applicable statute of limitations, 42 U.S.C. § 2000e–5(e); (2) the portion of plaintiffs' claim under 42 U.S.C. § 1981 which is based on events prior to March 14, 1976, is barred by the applicable statute of limitations; (3) plaintiffs have not challenged the various promotional tests utilized by defendant between 1974 and the present.

### A. *Title VII and the Statute of Limitations*

Plaintiffs filed a complaint with the Equal Employment Opportunity Commission on July 29, 1974. Defendant argues that the 180-day statute of limitations in Title VII[2] prevents plaintiffs from recovering for claims grounded in events which occurred prior to January 29, 1974—180 days before the filing of the claim. The Court disagrees.

■ Assuming *arguendo* defendant's contention that the plaintiffs were motivated to file their EEOC complaint by the promotion of four white officers (and no blacks) in July, 1974, the EEOC complaint alleged far more than one occurrence of racial discrimination. Plaintiffs were alleging and challenging general conditions that have existed in the Suffolk Police Department for years: the promotion of nineteen whites as opposed to one black; the methods of promotion; the predominance of whites in high-ranking positions and in the department generally; the privilege of white officers, but not blacks, to keep patrol cars overnight; the department's refusal to allow blacks to operate the police patrol boat and polygraph machine; and the disparities in assignments, pay, and promotions between white and black policemen. In other words, plaintiffs are maintaining that defendant has *continually* discriminated against them on account of their race. Consequently, the 180-day limitation of Title VII does not bar plaintiffs from raising events prior to 1974 in this case. *E. g., Williams v. Norfolk & Western Ry.,* 530 F.2d 539, 542 (4th Cir. 1975); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 348 (10th Cir. 1975).

*United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), cited repeatedly by defendant, is not applicable here. In *Evans,* a female employee who was discharged from her job when she married failed to file a timely complaint with the EEOC. Later, she returned to her job, but the company refused to credit her with seniority for any prior work. The Supreme Court held that the otherwise-unlawful act of discrimination became lawful when the employee filed no timely charge. Consequently, the denial of seniority was not a continuing violation:

> United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently than former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation.

*Id.* at 558, 97 S.Ct. at 1889 (citation omitted). In contrast, plaintiffs here have not alleged a single prior discriminatory act against one individual; rather, they have accused the defendant of prolonged and continuing discrimination against blacks as a class. Some of defendant's alleged conduct may be considered one-time acts of discrimination. However, plaintiffs' complaint as a whole describes a past and

---

**2.** 42 U.S.C. § 2000e–5(e) provides in pertinent part:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . .

present *pattern* of discrimination in many aspects of police work—for example, the promotion system, the operation of polygraph machines, the use of the patrol boat, and the overnight use of police cars. *Evans,* therefore, does not prevent plaintiffs here from raising events prior to January 29, 1974.

## B. *42 U.S.C. § 1981 and the Statute of Limitations*

Those plaintiffs who assert their claims under 42 U.S.C. § 1981 filed their complaints on March 14, 1978. Defendant argues that the two-year state statute of limitations, *Va.Code Ann.* § 8.01–243 (Repl. Vol. 1977), bars plaintiffs from raising claims in the § 1981 suit which are based on events prior to March 14, 1976.

 It is true that the two-year Virginia statute of limitations applies to § 1981 actions. *See, e. g., Runyon v. McCrary,* 427 U.S. 160, 179–82, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Patterson v. American Tobacco Co.,* 535 F.2d 257, 275 (4th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *Williams v. Norfolk & Western Ry.,* 530 F.2d 539, 541 (4th Cir. 1975). And the filing of the EEOC charge in 1974 did not toll the running of the statute of limitations. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). But the local statute of limitations is not applicable when continuous discrimination, rather than a single discriminatory act, is alleged. *See, e. g., Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 467 n. 13, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Prophet v. Armco Steel, Inc.,* 575 F.2d 579, 580 (5th Cir. 1978); *Williams v. Norfolk & Western Ry., supra,* at 542; *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 478 F.2d 979, 994 & n. 30 (1973). As has been described in the discussion of the Title VII claim, *supra,* plaintiffs have alleged a continuing pattern and practice of discrimination that began long before 1976 and persists even today. Therefore, their claims under 42 U.S.C. § 1981 are not confined to conduct occurring after March 14, 1976.

## C. *Plaintiffs' Challenge to the Promotional Tests*

Defendants assert that plaintiffs have not challenged the various promotional tests utilized by defendant from 1974 to the present. At the time plaintiffs filed their original complaint with the EEOC in July, 1974, defendant used no tests in promotions. The department first utilized tests in October, 1974. Several of the plaintiffs in the present suit brought an action under 42 U.S.C. § 1983 in March, 1975, against various officials of the City of Suffolk, alleging discrimination against blacks within the police department. Counsel for all parties stipulated in a final pretrial order that the written tests used for promotions were nondiscriminatory. The suit was later dismissed without prejudice. In the summer of 1975, plaintiffs filed perfected EEOC charges, only a few of which made references to tests, according to defendant. Defendant asserts that plaintiffs did not even suggest that testing was at issue until their proposed pretrial order of September 12, 1978. Therefore, the argument goes, since plaintiffs have never amended their EEOC charges, none of the promotional tests can be included in the Title VII claim. Furthermore, defendant says, the tests administered in 1974 and 1975 cannot be included in the § 1981 claim because they were given before March 14, 1976, and thus barred by the state statute of limitations.

 Defendant's contentions are without merit. In the first place, as discussed *supra,* the Virginia statute of limitations is inapplicable to the § 1981 claims in this case. Furthermore, the Court finds that plaintiffs have raised the testing issue since 1974. As defendant itself admits, at the time plaintiffs sent their complaint to the EEOC in July, 1974, promotions were not based on tests or test scores. It is therefore understandable that plaintiffs' letter of July, 1974 complained only of discrimination in the existing promotion system and failed to mention tests. Defendant contends that plaintiffs should have amended their complaint in October, 1974, when the

first tests were administered, so as to include testing. This is an unreasonable expectation. Plaintiffs were challenging alleged racial discrimination in promotions, irrespective of the particular *method* of promotions currently in use.

 In any event, several of the plaintiffs in this case *did* raise the testing issue when they brought a class action suit under 42 U.S.C. § 1983 in March, 1975. *See* complaint in *Samuel E. Glover, et al. v. Thomas G. Underwood, et al.*, Civil Action No. 75–97–N, paragraph 10(B), filed March 7, 1975. All parties did stipulate in a final pretrial order in *Glover* that the tests then in use were "nondiscriminatory". But on November 6, 1975, this Court dismissed the suit without prejudice, with the consent of all parties, in order that EEOC might first complete its investigation of plaintiffs' charges. Plaintiffs are not estopped from changing the allegations concerning the tests as a result of the EEOC investigation that was the cause of the dismissal. A dismissal without prejudice leaves the situation as if suit had never been brought. *E. g., Moore v. St. Louis Music Supply Co., Inc.*, 539 F.2d 1191, 1194 (8th Cir. 1976); *Bomer v. Ribicoff*, 304 F.2d 427, 428 (6th Cir. 1962).

The testing issue was also raised by several of the plaintiffs in their perfected EEOC complaints in 1975. Plaintiffs Joe, Walton, Glover, and Williams cited testing as one tool of racial discrimination. All plaintiffs complained of discrimination in promotions; significantly, none of them confined their challenge to a particular method of promotions.

 Thus, plaintiffs alerted defendant to the issue of testing long before they filed their complaints—which alleged past and current general racial discrimination in promotions, not discrimination in one particular method of promotions—in March, 1978. Furthermore, even if plaintiffs had not raised the issue themselves before filing this suit, they still could contest the validity of the 1974 and 1975 tests as well as tests given since 1976. According to the plaintiffs, on November 25, 1975, the EEOC found reasonable cause to believe that defendant's promotion practices, *including the tests administered up to that time*, discriminated against blacks because of their race. In *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976), the Fourth Circuit ruled that the filing of a complaint with the EEOC is sufficient to support a civil suit for any discrimination stated in the charge itself *or* developed in the course of a reasonable EEOC investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the required statutory conciliation procedures. The court of appeals stated:

> If the EEOC uncovers during that investigation facts which support a charge of another discrimination than that in the filed charge, it is neither obliged to cast a blind eye over such discrimination nor to sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge thereon, thereby beginning again a repetitive investigation of the same facts already developed in the ongoing investigation. To cast a blanket over such facts in the ongoing proceedings would be a violation of the EEOC's statutory obligation in the area of employment discrimination. To require a new charge based on those facts and to begin again the administrative process thereon would result in an inexcusable waste of valuable administrative resources and an intolerable delay in the enforcement of rights which require a "timely and effective remedy."

*Id.* at 365 (citations omitted). If *General Electric* allowed a new *type* of discrimination—sexual—to be alleged in a suit arising from the original complaint (which alleged only racial discrimination), surely plaintiffs here can allege a *method* of discrimination (testing) found by the EEOC but not specifically discussed in the original EEOC complaint. Thus, because the EEOC reasonable cause determination found discrimination against blacks by means of the tests used through the end of 1975, plaintiffs may challenge the validity of the tests adminis-

tered in 1974 and 1975 *and* tests given thereafter.

## II. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs have moved this Court for summary judgment, costs, attorney's fees and expenses on the ground that the promotional tests administered by defendant to police officers in 1974 and 1975 are unlawful under Title VII of the Civil Rights Act of 1964. Plaintiffs contend that summary judgment is appropriate because defendant has made no effort to validate these tests and because there is no evidence that these tests are valid under EEOC guidelines.

■■■ If an employment practice which operates to exclude blacks cannot be shown to be related to job performance, the practice is prohibited. Once a plaintiff-employee demonstrates that an employment procedure or testing mechanism operates to exclude disproportionate numbers of blacks, the burden falls on the defendant-employer to validate it—that is, to show that any given requirement has a manifest relationship to the job in question. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.,* 401 U.S. 424, 431–32, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The question of job relatedness is a question of fact. *See, e. g., Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 427, 95 S.Ct. 2362; *Griggs v. Duke Power Co., supra,* 401 U.S. at 432, 91 S.Ct. 849; *United States v. Georgia Power Co.,* 474 F.2d 906, 912 (5th Cir. 1973).

■■■ This Court may render summary judgment only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." *Fed.R. Civ.P.* 56(c). The Court cannot so find in this case. In paragraph 2 of their complaints, plaintiffs alleged, *inter alia,* that defendant had failed to promote them because of their race. In the fifth defense listed in its answer, defendant denied this allegation. Obviously, defendant was denying that *any* aspect of its promotion system, including the use and type of tests, was racially discriminatory. The validity of the tests is in dispute and, therefore, a genuine issue of material fact exists.

■■■ Plaintiffs complain that defendant has not stated the methods by which the International Personnel Management Association validated the 1974 and 1975 tests.[3] If defendant has deliberately withheld this information from plaintiffs, it would be subject to sanctions under Rule 37 of the Federal Rules of Civil Procedure. Absent a showing of deliberate concealment, however, the Court is reluctant to impose sanctions. If plaintiffs believe that further discovery is necessary to prepare their arguments on the validation issue, the Court again emphasizes its willingness (expressed in the final pretrial conference) to reopen discovery.

## III. *Plaintiffs' Motion to Reconsider*

Plaintiffs have requested that the Court reconsider its Order of June 27, 1978, which denied their motion to bring these actions as a class action and failed to rule on their request to seek injunctive relief.

■■■ The request of plaintiffs to bring their action as a class action must be denied. On two previous occasions—once during this suit and once in the course of the 1975 action, which was very similar to the present case—this Court has denied permission to have this suit converted into a class action. *See* Order in Civil Actions No. 78–142–N through 78–147–N, filed June 6, 1978; Order in Civil Action No. 75–97–N, filed October 2, 1975. Nothing in plaintiffs'

---

**3.** Contrary to plaintiffs' assertions, defendant is not foreclosed from showing the validity of a test even though the test was not validated before it was administered. Defendant may prove that the test is job related at trial by "professionally acceptable methods." *Albemarle Paper Co. v. Moody,* 422 U.S. 425–36, 95 S.Ct. 2362 (1975). But any validation study conducted shortly before trial will be examined with great care. *Id.* at 433 n. 32, 95 S.Ct. 2362. Furthermore, noncompliance with the EEOC guidelines does not foreclose an employer from validating the test through other methods. *See id.* at 430–31, 95 S.Ct. 2362.

memoranda in support of their motion alters the fact that the "class" here is extremely limited and identifiable.

On the other hand, the Court will grant plaintiffs permission to amend their complaint so as to seek injunctive and declaratory relief as well as damages. Title VII empowers the Court to enjoin an employer from engaging in an unlawful employment practice. 42 U.S.C. § 2000e–5(g). Plaintiffs ask only to seek additional remedies, not to change the cause of action or the parties involved therein. Defendant, which has known the parties and issues involved in this case for six months, hardly can complain that amending the complaint will be prejudicial. Even if plaintiffs could seek no injunctive or declaratory relief, a finding by the Court that defendant had engaged in unlawful employment practices would be—in substance, if not in form—a declaratory judgment to that effect and an injunction against such conduct in the future. Furthermore, any final judgment of this Court in plaintiffs' favor may grant *any* relief to which they are entitled, even if plaintiffs failed to demand such relief in their pleadings. *Fed.R.Civ.P.* 54(c). Because the Court may grant injunctive and declaratory relief to plaintiffs regardless of the contents of the pleadings, there is no justification for denying them the right to seek this relief formally in their complaints.

For the foregoing reasons, the various motions of plaintiffs and of defendant for summary judgment are hereby DENIED. Plaintiffs' motion to reconsider their request to convert this case into a class action is hereby DENIED. Plaintiffs' motion to reconsider their request to amend their complaint so as to include requests for declaratory and injunctive relief is hereby GRANTED.